ANNIE HENRY *vs.* MICHAEL KEEGAN ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 6th, 1935—decided January 15th, 1936.

*Edward S. Pomeranz,* with whom was *George Miske,* for the appellants-defendants.

*Philip Troup* filed a brief for the appellant-plaintiff, but due to illness did not argue the cause.

HINMAN, J. William Henry, decedent husband of the claimant, entered the employ of the respondent Keegan at the latter's dairy farm in Clintonville in May, 1934. He died on August 12th, following; it was claimed that his death resulted from injuries arising out of and in the course of his employment, and after hearings at which much medical evidence was received the compensation commissioner made a finding and award granting the claimant compensation at $9.50 per week for the period, three hundred and twelve weeks, provided by statute (General Statutes, § 5234) for death resulting from accident. Facts deemed material to the present inquiry, as found by the commissioner but rearranged chronologically, include the following: On July 10th and 11th Henry went to the New Haven Hospital Dispensary for treatment for a condition on his right hip resembling a boil, and a scab-like lesion was found on his right ankle. He gave a history of loss of appetite beginning about four weeks before. It was suspected that he was suffering from leukemia and hospitalization was advised. On July 17th while he was returning calves to pasture one of them kicked or stepped on his left ankle, inflicting a scratch. During the next two weeks this appeared to heal very slowly and the area surrounding it was red and swollen. On July 31st a cow which he was leading became enraged by the appearance of a dog in the pasture and

butted and shook the decedent. A doctor who attended him found him suffering from a contusion of the chest and that his ankle needed treatment. His condition becoming more serious, he was sent to a hospital on August 3d. Gangrene developed in the left leg from the ulcer on the left ankle, septicemia set in, and he died on August 12th. "The accidental injuries sustained by the decedent on July 17th and 31st, 1934, arose out of and in the course of his employment. Said traumas were the immediate and proximate cause of [his] death."

The commissioner further found, however, that at the time of the injuries the decedent was suffering from leukemia, the particular type now believed to be monocytic. Leukemia is a blood disease characterized by an over-growth of white blood cells over red blood cells, ultimately causing death. Monocytic leukemia is one of the least known types and is generally considered one of the most acute. Leukemia, and particularly the monocytic type, is often characterized by hemorrhagic areas or spots in the skin, and when these are injured and become infected they may resemble boils and are slow healing. "The leukemic condition which [decedent] had was aggravated by the sepsis in his left ankle following the injury of July 17th and by the general shaking up and bruising of July 31st" and "although monocytic leukemia is in itself fatal, the decedent's death was hastened by the sepsis . . . and by the . . . shaking up and bruising . . . which was followed by the septicemia."

The respondents claimed that the decedent did not sustain any injury on either July 17th or 31st, and that he died from monocytic leukemia without any septicemia or other contributing cause. The commissioner found expressly against both of these contentions, and the respondents' motion to correct the finding and

their appeal to the Superior Court from the refusal to grant the corrections sought were largely directed thereto. As to the finding made, the court held that "the evidence indicated a substantial conflict rendering interference by this court inappropriate."

The respondents also sought the addition of a finding pertaining to the expectancy of life of a victim of monocytic leukemia, and the court ruled that such a finding was required in order to determine whether apportionment should be made under the provision of § 5223 of the General Statutes that "In the case of aggravation of a pre-existing disease, compensation shall be allowed only for such proportion of the disability or death due to the aggravation of such pre-existing disease as may be reasonably attributed to the injury upon which the claim is based." The appeal was to that extent sustained and the case remanded for those purposes.

The respondents pursue in this court like attempts to so correct the finding as to make it appear that the decedent was not injured, as was claimed, and that, in consequence, disease was the sole cause of his death, or, even if the finding of one or both injuries stands, it is claimed that the evidence requires a finding that death was caused solely by leukemia, without aggravation or other contribution on account of such injuries. There was some conflict of evidence as to the occurrence of the accidents, and considerable as to the relative effects of the disease and the injuries in producing death at the time it occurred, and the Superior Court was amply warranted in holding that the claimed corrections could not be made by it. *Mitaly* v. *Crofut & Knapp,* 118 Conn. 672, 675, 174 Atl. 71; *Driscoll* v. *Jewell Belting Co.,* 96 Conn. 295, 299, 114 Atl. 109. The respondents concede that if the cause of death was the leukemia aggravated by the injury, remand for

a finding as to expectancy and for apportionment under § 5223 is proper. The claimant also appears to concede that upon a finding that the death of the decedent was caused by the disease aggravated by the injury, such action would be required, but claims that the finding as made is not to be construed, as did the Superior Court, as holding that the cause of death was leukemia aggravated and accelerated by accidental bodily injury, but as meaning that the cause of death was the injury, the leukemia being merely a contributing cause. While the finding is somewhat ambiguous, considered as a whole it does not admit of such a construction. The conclusion deducible therefrom when construed most favorably to the claimant is that the decedent was afflicted by a disease which would ultimately be fatal but that by reason of his injuries his death occurred earlier than it otherwise would. Such a situation calls for apportionment of compensation according to the relative effect, upon the length of the decedent's life, of the injuries and the disease, if the respondents, upon whom the burden rests, establish facts requisite to such an apportionment. *Richardson* v. *New Haven*, 114 Conn. 389, 392, 158 Atl. 886.

Even if the claimant were right as regards the construction placed by her upon the finding, the statute concerning apportionment would be applicable. Previous to 1921 our law was that, even though an employee was suffering from a pre-existing disease, if an injury received in the course and within the scope of his employment was the proximate cause of incapacity, he was entitled to receive the full amount of compensation provided by the statute. *Hartz* v. *Hartford Faience Co.*, 90 Conn. 539, 543, 97 Atl. 1020; *Madore* v. *New Departure Mfg. Co.*, 104 Conn. 709, 719, 134 Atl. 259. The statute concerning apportionment was obviously intended to meet a situation where

an employee having a pre-existing disease suffers a compensable injury and the two operating together result in incapacity which, were it not for the pre-existing disease, would not be so extensive as it in fact becomes or in death which would not have occurred as soon as it did had it not been for that disease, and provides that where a pre-existing disease is aggravated, resulting in a greater incapacity or quicker death than would otherwise result, an apportionment shall be made. The statute applies whether the immediate cause of the incapacity or death is the pre-existing disease aggravated by the injury or is the injury the incapacity from which has been increased by the pre-existing disease or the death from which has been accelerated by it. It still remains true, however, that the existence of a constitutional condition or latent tendency predisposing an employee to an injury does not subject him or his dependents to an apportionment unless there is a pre-existing disease which, operating in conjunction with the injury, does in fact increase the incapacity or accelerate the death. *Richardson* v. *New Haven,* supra.

The claimant asserts that the question of apportionment is not open on the appeal, on the ground that no claim was made therefor before the compensation commissioner. *Morisi* v. *Ansonia Mfg. Co.,* 108 Conn. 31, 37, 142 Atl. 393. While the major contention of the respondents at all stages of the proceedings has been, as above indicated, that leukemia was the sole cause of death and that therefore no compensation was recoverable, the record discloses that they offered evidence of the expectancy of life of the decedent, due to his diseased condition, and that they moved, before the commissioner, for insertion of a finding of such expectancy. This laid a foundation for a claim to apportionment, and sufficiently evinces a claim to the

benefit of it, in case they did not prevail upon their major contention that no compensation was recoverable. The evidence as to such expectancy indicated, even upon the maximum estimate of claimant's medical witnesses on cross-examination, an expectancy far short of the period covered by the award as made.

There is no error.

In this opinion the other judges concurred.